## HUNTER v. UNITED STATES.*

### No. 8619.

Circuit Court of Appeals, Fifth Circuit.
Jan. 25, 1938.

*Rehearing denied Feb. 21, 1938.

Edward S. Hemphill, of Jacksonville, Fla., for appellant.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Wm. A. Paisley, Asst. U. S. Atty., of Jacksonville, Fla., for the United States.

Before SIBLEY, HUTCHESON and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant's suit on a converted war risk policy resulted in an instructed verdict against him. As originally brought in 1933, his suit declared that his policy matured by reason of permanent and total disability commencing during the month of October, 1930, as the result of pulmonary tuberculosis.

Before the case went to trial, he amended his petition to allege that the disability arose prior to January, 1932. This was the date when for failure to pay the premium then due, the policy lapsed unless prior thereto it had, through plaintiff's becoming permanently and totally disabled, become a matured claim.

On June 28, 1932, plaintiff was admitted to the Veterans Hospital at Oteen, N. C., and put to bed, remaining as a twenty-four-hour bed patient until March of 1933. He then went to the semi-ambulatory ward where he remained until June, 1933, and then was put on exercise. On August 22, 1933, he left the hospital without notice, and without leave, and did not go back or attempt to go back again. Married since leaving the hospital, he has not attempted to take hospitalization at any other government hospital, but has from time to time gone in for observation and examination at the government's request, for compensation purposes. He testified he knew he could go to a government hospital, but he thought he could take care of himself just as well.

The District Judge thought that plaintiff's difficulty did not arise so much out of his failure to show the permanency of the condition found on June 29, 1932, when upon examination at the Veterans Hospital he was diagnosed as having tuberculosis, pulmonary, chronic, far advanced, active, and was put to bed as a twenty-four-hour bed patient where he remained until March, 1933. In his opinion, the insuperable difficulty which plaintiff could not surmount was that, though there was testimony showing the existence of a condition which partially and temporarily disabled plaintiff, there was no proof from which it might reasonably be inferred that plaintiff was before May, 1932, when his disabling sickness took effect, totally and permanently disabled.

Here appellee argues that the District Judge was right in the view he took, that the evidence showed neither totality nor permanence existing before January 1, 1932. It argues too, that if it be assumed that the disease had advanced to the totally disabling stage before that date, the proof is insufficient to show the permanence of that condition, if plaintiff had submitted to proper care and cure. It shows that though plaintiff was improving, and had advanced to the point of taking exercise, he left the hospital and married, and has since not offered himself for hospitalization. It shows further, that even without hospitalization plaintiff's disease, though not yet arrested, was inactive, and plaintiff's weight had advanced from 112 to 135 pounds. It therefore insists that the judgment on the verdict in its favor must be sustained.

Appellant, on his part, urges that the testimony, both medical and lay, furnishes ample support for a verdict finding him totally and permanently disabled before January 1, 1932. He calls attention to the testimony of Dr. McEuen, an X-ray specialist and witness in his behalf, who testified that an X-ray film taken in January, 1931, showed a small cavity in the upper lobe of the left lung, which would indicate that the disease had been present for six months or more, and that this was the same cavity which showed up in subsequent films, taken in June and October, 1932, January, March, and June, 1933, and May and October, 1936. That his lay witnesses had testified that beginning in May, 1930, plaintiff appeared to be sick and unable to do his work as he had done it formerly, that his condition was worse and he seemed less able to work in 1931, and that in 1932 his condition became still worse and he finally became bedridden. He points, too, to McEuen's testimony that the June, 1932, films showed a cavity about one-half inch in the left lung, and that the film showed an active case of tuberculosis, established and rather well advanced. That if the cavity could be healed or closed there was a possibility of arrest, but he doubted if the plaintiff would ever get a healing, because he did not believe that at his age a patient should have a collapsing of his lung to cure a cavity, and he did not think

it could be cured otherwise. That the October plate showed a cavity in the right lung and slight improvement in the left lung, showing that the patient was possibly responding to treatment. That in all the later films down to and including 1936, the cavity still appeared, but lessened in extent, and showing some improved condition; that in view of the patient's age and of the film showing, he did not believe plaintiff's case could be arrested so that he would not break down if he undertook to work. He relied, too, upon Dr. Limbaugh's testimony, as to the value of X-ray and sputum tests, and that if the January, 1931, film showed what Dr. McEuen said it did, this would indicate a moderately advanced stage of the disease. That the presence of a cavity begins to indicate advanced tuberculosis, and that a cavity of two centimeters classifies the patient as having far advanced tuberculosis. That the prognosis for a man between 48 and 49 years of age would be poor, because the chances for people over 45 with active tuberculosis and cavities are poor, and that any patient with tuberculosis is active as long as cavitation is present. He said it was not probable that a patient of the age of insured with the hypothetical conditions stated would attain an arrest by taking treatment such as was prescribed for the insured at Oteen. He admitted that if the X-ray films taken in 1931 showed only an old scar, as Dr. Shaw had testified, the patient would then be an inactive case. He thought that if a patient had an arrested case in 1931 and had contracted influenza in April, 1932, he would hardly develop an active case of tuberculosis with cavities in May, June, or July of the same year. Plaintiff himself testified that when discharged from the army it was with findings that he was tubercular, but he did not believe them. That he had gone along all right until 1930, when he first noticed he did not have the energy he had always had; that in 1931 he noticed a very marked decline in his physical capacity; his sleep would be disturbed by coughing; that he got weaker then and had to take rest periods frequently, and since that time he has not been able to do any work. He stopped paying his premiums in 1931 because he had no money.

Against this testimony the government offered proof that plaintiff had made claims against two casualty companies for disability benefits in which he stated that his disability began in April, 1932. That he fixed this date from the time he was bed-ridden. In the claims he stated his case as "flu, T. B. developing later."

It offered, too, physical examinations made from time to time, particularly the one on June 29, 1932, made at Oteen, where plaintiff was diagnosed as having tuberculosis, pulmonary, chronic, far advanced, active. A sputum test was found positive. At that time he weighed only 112 pounds, but when he was examined for compensation, July 28, 1936, his weight was found to be 128 pounds with a diagnosis quiescent. Report on the physical examination made in 1932 showing influenza, possibly recurrent, active pulmonary tuberculosis, was also offered, as was proof that no positive sputum was ever found after August, 1932, and that the hospital records showed that plaintiff was not fully co-operative as to exercise and orders generally. A report of the examination at Bay Pine, Fla., in October, 1936, showed plaintiff weighed 129 pounds and that his tuberculosis was diagnosed as active.

Dr. Shaw, an X-ray specialist, testified that the January, 1931, films showed a case of old tuberculosis which had repaired itself and left scars in both lungs. He thought it was an arrested case; he saw no sign in the film of the presence of active disease.

Dr. Broadbent, who examined the insured in 1931, gave a diagnosis of arrest, no active cavity present; that the plaintiff's condition was not at all serious; that he could then work with safety to his health; that a patient with a small cavity could be brought to an arrested case. He testified that influenza could cause an inactive case of tuberculosis to become active. That if the patient had had an inactive case in 1931, and was found active in 1932, with cavitation, and he had had influenza in May, 1932, such influenza could have brought on the activity.

There was, too, the testimony of a specialist in tuberculosis. He testified that a person could have tuberculosis which had progressed to the cavity stage and still become an arrested case. That if an X-ray report of January, 1931, showed an old tuberculosis lesion not active, this would not prevent the carrying on of a light occupation, and if an X-ray report of the same individual in the spring of 1932 showed a cavitation and a far advanced case of tuberculosis, there was no reasonable certainty as to when the cavity occurred, that it might have become active in 1931, and if he had influenza, that disease

or any acute respiratory disease might have caused the reactivation.

Appellant insists that this testimony made out a clear case for the jury upon the issue he tendered, that before January 1, 1932, he became totally and permanently disabled. Appellee, that it did not.

We have carefully considered it. We agree with the District Judge that there was no firm basis in the evidence, indeed no basis at all but conjecture, for a finding that before January 1, 1932, plaintiff was suffering from tuberculosis at a stage which could be reasonably said to have reached a condition of total and permanent disablement. For all that plaintiff offers to establish that he was, is the testimony of himself and his lay witnesses, that his health was impaired and his ability to work diminished in 1930 and 1931, and that an X-ray plate taken in January, 1931, showed that there might have been some beginnings of a flare up of an old lesion. Proof no more definite than this that tuberculosis has advanced to a totally disabling and permanently incurable stage before the policy lapsed for nonpayment of premium, is not sufficient to make out a jury issue. McDonald v. United States, 8 Cir., 89 F.2d 128.

The judgment was right. It is affirmed.